Chief Judge KOZINSKI,
concurring:
This is a disturbing case. There’s no physical evidence linking Debra Milke to the crime, and she has maintained her innocence since the day she was arrested. Neither of the men who actually did the killing testified against Milke. Roger Scott refused to testify because his “testimony would not be what he felt was the truth.” After spending many years on death row, James Styers continued to insist that “Debbie had nothing to do with it and thats [sic] the truth.” The only evidence linking Milke to the murder of her son is the word of Detective Armando Saldate, Jr. — a police officer with a long history of misconduct that includes lying under oath as well as accepting sexual favors in exchange for leniency and lying about it.
*1023 Equally troubling are Saldate’s unorthodox interrogation methods. Saldate has obtained confessions from people who were intoxicated, hospitalized and on pain medication. See Op. 1014; Appendix. Saldate once ordered a juvenile to be detained in an interrogation room, where he was handcuffed to a table, even though the police had “no information linking the Defendant” to a crime. Order Granting Mot. to Suppress at 2, State v. Jones, No. CR 90-05217 (Ariz.Super.Ct. Nov. 29, 1990). The trial court suppressed the resultant murder confession and called the illegal detention “a show of flagrant misconduct.” Id. at 3. It later suppressed the resultant physical evidence, too, and the Arizona Court of Appeals affirmed both suppression orders, condemning the “purposeful arrest lacking in probable cause, for the improper motive of investigation.” State v. Jones, Nos. 1 CA-CR 90-1922, 1 CA-CR 91-0345, at 1, 6 (Ariz.Ct.App. Nov. 10, 1992). In another case, Saldate admitted interrogating a suspect who was strapped to a hospital bed, incoherent after apparently suffering a skull fracture. See Transcript of Trial, State v. Yanes, No. CR 130403, at 23-25 (Ariz.Super.Ct. May 31, 1983).
Then there’s Saldate’s practice of disregarding the right to remain silent when invoked by suspects he’s questioning. The Arizona Court of Appeals described one such example where a defendant “made an unequivocal invocation to remain silent,” yet Saldate pushed on with the interrogation, insisting that he only wanted the defendant’s “side of the story.” State v. Mahler, No. 1 CA-CR 90-1890, at 4 (Ariz.Ct.App. Oct. 2, 1992). The trial court didn’t suppress the confession, and the defendant was convicted of murder. Id. at 1-2. But the Arizona Court of Appeals held “[t]his conduct violated Mahler’s right to remain silent” and remanded his case because of the illegally obtained confession. Id. at 2, 4, 6. In Milke’s case, Saldate testified that he doesn’t have to stop talking to suspects just “because they asked for an attorney. That would be ridiculous.... ” What I find ridiculous is that this man — with his track record of trampling basic constitutional rights — is sent to interrogate a suspect without a tape recorder, a video recorder, a witness or any other objective means of documenting the interrogation.
Saldate’s supervisor asked him to record Milke’s interrogation, yet Saldate didn’t even take a tape recorder with him. When he arrived in Florence, Arizona, where Milke was waiting for him, he didn’t obtain a recorder there either, even though he knew they were readily available. Saldate claims that Milke refused to have the conversation recorded, but admits that he “basically didn’t want to record it anyway.” And why not? Because “a tape recorder is an obstacle for [him] to get to the truth” and so “it’s [his] practice never to use a tape recorder.” Of course, being left with no recording is an obstacle for us to get to the truth, but Saldate tells us not to worry: “[The] conversation was going to be noted by me in a truthful manner, so there was really no need for tape recording.” Right.
No other officer was present for the interrogation; no one watched through a two-way mirror; no hidden camera or microphone captured what happened inside the interrogation room. Saldate never asked Milke to put her confession in writing or initial a single sentence acknowledging she had confessed. Nor did Milke sign a Miranda waiver. Saldate testified that “[t]here was no document ... we had available to us” where “we could have a suspect sign that they waive their rights.” And what of the practice of having a suspect sign the officer’s Miranda card? “I never knew that ever happened,” Saldate testified. “Never happened with my case *1024 or any other case I was involved in.” This, from an officer with twenty-one years on the Phoenix Police force. Soon after the interrogation, Saldate destroyed the notes he supposedly took while questioning Milke, so we have absolutely nothing contemporaneous with the supposed confession.
In effect, Saldate turned the interrogation room into a black box, leaving us no objectively verifiable proof as to what happened inside. All we have are the conflicting accounts of a defendant with an obvious reason to lie and a detective whose disdain for lawful process is documented by one instance after another of lying under oath and other misconduct.
No civilized system of justice should have to depend on such flimsy evidence, quite possibly tainted by dishonesty or ov-erzealousness, to decide whether to take someone’s life or liberty. The Phoenix Police Department and Saldate’s supervi-' sors there should be ashamed of having given free rein to a lawless cop to misbehave again and again, undermining the integrity of the system of justice they were sworn to uphold. As should the Maricopa County Attorney’s Office, which continued to prosecute Saldate’s cases without bothering to disclose his pattern of misconduct.
Indeed, given Saldate’s long history of trampling the rights of suspects, one wonders how Saldate came to interrogate a suspect in a high-profile murder case by himself, without a tape recorder or a witness. And how could an interrogation be concluded, and a confession extracted, without a signed Miranda waiver? In a quarter century on the Ninth Circuit, I can’t remember another case where the confession and Miranda waiver were proven by nothing but the say-so of a single officer. Is this par for the Phoenix Police Department or was Saldate called in on his day off because his supervisors knew he could be counted on to bend the rules, even lie convincingly, if that’s what it took to nail down a conviction in a high-profile case?
It’s not just fairness to the defendant that calls for an objectively verifiable process for securing confessions and other evidence in criminal cases. We all have a stake in ensuring that our criminal justice system reliably separates the guilty from the innocent. Letting police get away with manufacturing confessions or planting evidence not only risks convicting the innocent but helps the guilty avoid detection and strike again.
Could the people of Arizona feel confident in taking Milke’s life when the only thread on which her conviction hangs is the word of a policeman with a record of dishonesty and disrespect for the law? Bad cops, and those who tolerate them, put all of us in an untenable position.
Milke may well be guilty, even if Saldate made up her confession out of whole cloth. After all, it’s hard to understand what reason Styers and Scott would have had for killing a four-year-old boy. Then again, what reason would they have to protect her if they know she’s guilty? But I seriously doubt the jury would have convicted Milke without the purported confession. Indeed, without the confession, there’s not enough evidence to support a conviction. Which is why it’s very important that the confession be reliable and lawfully obtained.
Both the district judge and the state trial judge found that Saldate was telling the truth when he testified that Milke waived her Miranda rights and didn’t ask for a lawyer. I discount the state court’s finding because it was made with no knowledge of Saldate’s repeated instances of lying under oath and other professional misconduct. One hopes the judge would have been more skeptical of Saldate’s account had she been aware that Saldate was *1025 disciplined for taking advantage of a female motorist and lying about it to his supervisors, and that he habitually lied in court, abused the interrogation process and disregarded Miranda.
Nor am I impressed by the district court’s finding. The district judge was aware of Saldate’s suspension and noted it in passing, Findings and Order at *4, Milke v. Ryan, No. CV 98-60-PHX-RCB, 2010 WL 383412 (D.Ariz. Jan. 29, 2010), but he didn’t specify the nature of the misconduct, nor did he acknowledge that Saldate’s supervisors had determined that his “image of honesty, competency, and overall reliability must be questioned” as a result of the misconduct. It’s hard to say he gave it due weight — or any weight at all.
The district judge did note Saldate’s Miranda violations but, somehow, construed them as supporting Saldate’s credibility. The judge reasoned that when Saldate had violated Miranda in the past, he had admitted it in his reports: “[Saldate] testified that [Milke] never asked for an attorney. If she had, Saldate would have noted it and included the information in his supplemental report. He had done so in other cases, including cases where he continued to converse with suspects even after they had invoked their right to remain silent or their right to an attorney. In some of these cases evidence was suppressed as a result of Saldate’s conduct during the interrogations.” Id. at *6 (internal citations omitted). The district court also found that “it was Saldate’s practice to note in his reports if a suspect invoked his right to remain silent or his right to an attorney. The fact that his report in this case does not contain such a notation supports his testimony that Petitioner did not ask for an attorney at the outset of the interrogation.” Id. at *11.
I find this backward reasoning unpersuasive. This was a high-visibility, high-pressure case, in which Saldate was called in especially and given much responsibility. It is highly doubtful he would have noted an invocation that would have undermined the alleged confession. Far more likely, Saldate had learned from earlier cases that documenting a Miranda violation could result in the exclusion of a confession and make him the object of judicial ire. This may also explain why Saldate so hastily destroyed the original notes from the interrogation. If they contained his habitual documentation of Miranda and other constitutional violations during the course of interrogation, he may have thought it wise not to have them available to impeach his official report.
Finally, the district judge said nothing at all about Saldate’s numerous instances of lying under oath, which tainted prior criminal cases. I find this omission inexplicable and conclude he must have overlooked them. Had the district judge taken these incidents into account, he might well have made a different finding.
I would reverse the district court’s finding that Milke knowingly waived her rights under Miranda and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The “confession,” if it was obtained at all, was extracted illegally. There can be no serious claim that admission of the confession was harmless. I would therefore set aside Milke’s conviction on the separate ground that it relied on an illegally-obtained confession that probably never occurred, and bar use of the so-called confession during any retrial of Milke.